**Jeff Dominic Price** | SBC 165534
1512 16th Street, Suite 2
Santa Monica, California 90404
Tel.   310.463.6210
jeff.price@mac.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. N.,<br><br>        Plaintiff,<br><br>        vs.<br><br>DETECTIVE HEATHER M. HENDRICKSON #429, RICK BRAZIEL, DETECTIVE J. LEROSE #773, SACRAMENTO POLICE DEPARTMENT, CITY OF SACRAMENTO, and TEN UNKNOWN NAMED DEFENDANTS ["ROES" 1-10], inclusive,<br><br>        Defendants. | CV14-2428 DDP-PLA<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  42 U.S.C. § 1983 Conspiracy; Unlawful Search and Seizure<br>2.  Deprivation of Civil Rights, 42 U.S.C. § 1983; Unlawful Search and Seizure<br>3.  42 U.S.C. § 1983 Supervisory Liability; Unlawful Search and Seizure<br>4.  Deprivation of Civil Rights under *Monell*, 42 U.S.C. § 1983; Unlawful Search and Seizure<br>5.  42 U.S.C. § 1983; Malicious Prosecution<br>6.  42 U.S.C. § 1983; Malicious Prosecution Supervisory Liability<br>7.  42 U.S.C. § 1983; *Monell*, Malicious Prosecution<br>8.  42 U.S.C. § 1983 Fabrication of Evidence;<br>9.  42 U.S.C. § 1983 Suppression of Exculpatory Evidence<br><br>DEMAND FOR JURY TRIAL |

**JURISDICTION AND VENUE**

1.   This is an action for redress for deprivations of constitutional rights under 42 U.S.C. § 1983 *et seq.* and the

1  jurisdiction of this court is invoked pursuant to 28 U.S.C. §§
2  1331 and 1343.

### PARTIES

4       2.   Plaintiff J. N., who makes this complaint, was within
5  this district and within the jurisdiction of the United States
6  of America at all times herein alleged (thus making venue in
7  this district is proper according to 28 U.S.C. § 1391(b)).

8       3.   Plaintiff files this action anonymously because of the
9  extreme obloquy and danger associated with being accused of
10 having committed the type of crime that plaintiff was
11 maliciously, unreasonably, recklessly and falsely accused of
12 committing, and to mitigate further damage to plaintiff.

13      4.   Defendants, including but not limited to Rick Braziel
14 ["BRAZIEL"], Detective Heather M. Hendrickson ["HENDRICKSON"],
15 Detective J. LeRose ["LEROSE"] and Richard Roe ["ROE"], a
16 supervisor, were employed by the City of Sacramento within the
17 Sacramento Police Department [SPD].

18      5.   Unknown defendants are the Sergeants of the SPD
19 divisions in which the individual defendants were employed and
20 other supervising officers, who may be policymakers, supervisors
21 or persons responsible for training and discipline of officers
22 in the field, including, but not limited to Officer Richard Roe.

23      6.   Defendant BRAZIEL was at all material times a
24 California police officer employed by the City of Sacramento as
25 Chief of Police and the legal head and policymaker for the
26 Sacramento Police Department at all times during which time
27 incidents occurred resulting in the deprivation of Plaintiff's

28

1  constitutional    rights,    which    are    collectively    and/or
2  individually referred to herein as the INCIDENT.

3      7.    Defendant Richard Roe was at all material times a
4  supervisor of the individual police officers involved in the
5  seizure of Plaintiff J. N. described herein.

6      8.    The Sacramento Police Department and the City of
7  Sacramento are governmental entities.

8      9.    Defendants City of Sacramento and Sacramento Police
9  Department were at all times alleged herein an unincorporated
10 association and or a California governmental entity charged with
11 and responsible for appointing and promoting, the employees of
12 the County of Sacramento, and for the supervision, training,
13 instruction, discipline, control and conduct of said employees.
14 At all times alleged herein defendant SPD had the power, right
15 and duty to control the manner in which the individual
16 defendants carried out the objectives of their employment and to
17 assure that all orders, rules, instructions, and regulations
18 promulgated were consistent with the United States Constitution,
19 the California Constitution, the laws of the United States, the
20 laws of the State of California, and the laws of the
21 municipality.

22     10.   At all times alleged herein defendant City of
23 Sacramento and the SPD had the power, right and duty to control
24 the manner in which the individual defendants carried out the
25 objectives of their employment and to assure that all orders,
26 rules, instructions, and regulations promulgated were consistent
27 with the United States Constitution, the California

28

1   Constitution, the laws of the United States, the laws of the
2   State of California, and the laws of the municipality.

3       11.   The   unknown   named   defendants   ["Doe"   defendants]
4   include, but are not limited to, unknown named Sergeants,
5   Lieutenants and Captains who acquiesced in the false arrest and
6   malicious prosecution of Plaintiff J. N., as is described below,
7   and unknown named employees of the City of Sacramento and the
8   SPD who were policymakers who created, fostered, acquiesced,
9   ratified   and/or   maintained   the   policies,   customs   and/or
10  practices that caused the deprivation of Plaintiff J. N.'s
11  constitutional rights.

12      12.   Plaintiff is ignorant of the true names and capacities
13  of those defendants named as Unknown Named Defendants or "Roes"
14  and will amend this complaint to allege the true names and
15  capacities of said defendants when they become known.

16      13.   Defendants, and each of them, did the acts and
17  omissions alleged herein in bad faith and with knowledge that
18  their conduct violated well and clearly established and settled
19  law.

20      14.   Each and every defendant who is a natural person is
21  sued in both his/her individual/personal capacity, as well as in
22  his/her official capacity if he/she had any policymaking duties,
23  functions, or responsibilities with respect to the matters
24  alleged herein.

25      15.   At all times material herein, defendants, and each of
26  them, were acting as the employees, agents, representatives, and
27  officers of every other defendant herein, and within the course
28  and scope of such employment and agency.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16. Each and every allegation set forth in each and every averment of this complaint hereby is incorporated by this reference in each and every other averment and allegation and claim for relief of this complaint.

17. Plaintiff J. N. previously was deprived of interests protected by the Constitution and/or laws of the United States of America, and each and every defendant caused, by commission or omission, such deprivation while acting under color of law.

18. Any governmental entity defendant, policymaker, and/or supervisory official, including, but not necessarily limited to defendant Braziel, knowingly, or grossly negligently, or with deliberate indifference to the constitutional rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, acquiesced in, ratified, took no action to correct, an official policy, practice, or custom of permitting the occurrence of the type of wrongs set forth in this complaint, and/or improperly, inadequately, or with deliberate indifference to the constitutional rights of persons, grossly negligently, or with reckless disregard for constitutional rights, failed properly to train, to supervise, to retrain, to monitor, or to take corrective action with respect to the police and with respect to the types of wrongful conduct alleged in this complaint against the police, including, but not limited to, the failure to train, to supervise, to retrain, to monitor and to take corrective action with respect to the failure to enforce the law of the State of California, the unconstitutional enforcement of local ordinances, and the

1  enforcement of unconstitutional ordinances and statutes so that
2  each one of them is liable legally for all injuries and/or
3  damage and damages sustained by Plaintiff J. N. pursuant to the
4  legal principles set forth in *Monell v. Department of Social*
5  *Services of the City of New York,* 436 U.S. 658 (1978), *Heller v.*
6  *Bushey,* 759 F.2d 1371 (9th Cir. 1986), *cert. granted and rev'd on*
7  *other grounds sub nom. City of Los Angeles v. Heller,* 106 S.Ct.
8  1573 (1986), and *Larez v. Gates,* 946 F.2d 630 (9th Cir. 1991),
9  the content of all of which is incorporated herein by this
10 reference. All policymaker/supervisorial defendants are sued on
11 these theories both in their individual/personal capacities as
12 well as in their official capacities. The term
13 "policymaker/supervisorial defendants" as used herein includes
14 persons and/or entities who are not alleged to have been
15 physically at the scene of the actual incidents and succeeding
16 events set forth in this complaint. It is also alleged that
17 prior failures to investigate and to discipline the police
18 misconduct in this case all make the policymaker/supervisorial
19 defendants liable in this case.

20    19.   The INCIDENT is the series of events and circumstances
21 that occurred on or about August 17, 2011, before and
22 thereafter, as more fully described in this pleading.

23    20.   The allegations in the following paragraphs, ¶¶23-50,
24 are taken from the search warrant affidavit executed by
25 defendant Hendrickson in SPD Case No. 11-90844.

26    21.   Based upon the search warrant affidavit, in which she
27 asserted that the facts she set forth under oath in the
28 affidavit showed that sexual exploitation of a child in

1  violation of California Penal Code § 311.3 and depiction of

2  sexual conduct of a person under the age of 18 years in

3  violation of Penal Code § 311.11 had been committed and that the

4  affidavit provided probable cause to believe that the objects of

5  the search warrant would show that such crimes had been

6  committed, defendant Hendrickson sought a search warrant for all

7  stored electronic communications, including email, digital

8  images, buddy lists, friend lists, and any other files

9  associated with user accounts identified as: Facebook ID

10 "www.facebook.com/PaterNiki" and "katie_baby75@yahoo.com,"

11 including all connection logs and records of user activity for

12 these accounts, including IP logs, disconnect dates and times,

13 email messages, private messages in the user Inbox, Trash and

14 Sent Mail, comments, data related to the account including

15 account setup information (name, address, phone number etc.),

16 associated email addresses, user names associated with the

17 connections, and Internet Protocol addresses and sources,

18 billing records, records of contact by any person or entity

19 regarding these accounts/user names and any other subscriber

20 information.

21     22. Based upon the search warrant affidavit defendant

22 Hendrickson sought a search warrant for information pertaining

23 to the other computers to which the users of these accounts

24 connected, by any means, during the connection period, including

25 destination IP address, connection times and dates, disconnect

26 times and dates, method of connection to the destination

27 computer, and all other information related to the connection.

28

23. On 3-26-11, reporting party [R/P] Nicole W. contacted the Sacramento Police Department to report (SPD Case #11-90844) that at least two adult males had been contacting her 12 year old daughter, Katelynn W. [K. W.], through Facebook and other social media sites. The suspects had solicited her to commit sex acts, allow them to her see her body clothed and unclothed and to watch them perform sex acts, all while on web camera.

24. R/P Nicole W. reported that she found messages from these two males identified as "Pater Noster" and "Alex James" on their Facebook profiles, to her daughter K. W. R/P Nicole W. advised that she lived at **** Seyferth Way, located in the City and County of Sacramento.

25. On 03-31-11, defendant Hendrickson was assigned this case for follow-up. R/P Nicole W. had taken her daughter's laptop away and had not allowed her to access the computer, in order to preserve any digital or computer evidence. She provided defendant Hendrickson with the computer, as well as the login information for her daughter's computer and social media accounts.

26. R/P Nicole W. advised that she had gone onto her daughter's computer to use the Internet Explorer and had seen that her daughter's Facebook account was still logged on. When she checked her daughter's messages, she had seen several from the above two males, including messages similar to:

"I enjoy seeing your breasts"

"Can you put your fingers in your pussy?"

"Did you enjoy watching me jack off?"

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

1    "When can we meet again?"

2         27.  Most of the messages had been deleted prior to

3    defendant Hendrickson's viewing the computer.  However, when

4    defendant Hendrickson accessed the computer, she saw that one

5    of the males, "Pater Noster" had left messages in K. W.'s

6    inbox including:

7         **Subject:**  None

8         **Date:**  3/20/2011  1:58 PM

9         Ughhh wat did u doo??

10

11        **Subject:**  None

12        **Date:**  3/20/2011  1:59 PM

13        NOOOOOOOOOO

14

15        **Subject:**  None

16        **Date:**  3/20/2011  6:18 PM

17        katie u cant be serious bout unfriending me again ://

18   c'mon u didnt say

19        anything...how shud i know?  u know i love u sooo much

20   <33333

21

22        **Subject:**  None

23        **Date:**  3/26/2011  11:48 AM

24        I DOOO love you K****!!! I thought u liked it and u

25   didn't say anything i shud stop...I

26   love you, pls don't be mad at me I miss you so much <3333.

27        28.  R/P Nicole W. advised that she had talked to her

28   daughter about the messages and that her daughter had finally

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

told her that the two males had contacted her in "Tiny Chats", a sidebar video chat associated with Facebook and that they had been showing her sexual acts, asking her to show her naked breasts and body, and perform sexual acts in front of the camera.

29.   Defendant Hendrickson conducted an Internet search of the name "Pater Noster" and found that it is Latin for "Our Father." She ran a last name through the CalPhoto Mugshot system and located one subject. When defendant Hendrickson ran a records/warrants check on the subject, she located a criminal history listing one of the subject's alleged AKAs. Defendant Hendrickson conducted an internet search on a name with that DOB, and located photographs and news articles, including an article which purportedly reported that the subject (plaintiff J. N.) had been arrested. Included in the photos was a picture of the subject. Defendant Hendrickson compared that picture to the most current DMV picture for the subject, and concluded that they appeared to be of the same person.

30.   Defendant Hendrickson put together a "six pack" photo line-up in Cal-Photo, using plaintiff's most current picture (DMV, dated 2008).

31.   On 03-31-11, defendant Hendrickson interviewed K. W. She advised that she met Suspects "Pater Noster" and Alex J. in a chat room called "Tiny Chats" which is associated with Facebook.

32.   In "Tiny Chats", multiple people are on their web cameras and chat with others.   K. W. stated that people can "private chat," where they can have a video chat with another

person privately. K. W. stated that both suspects had requested private chats with her after chatting with her in "Tiny Chats".

33. K. W. stated that suspect Alex J. had been the one to ask her to put her fingers inside her vagina, and that he had sent her pictures of his genitalia via text, erect and during masturbation. Suspect Alex J. had also asked her to send pictures of her genitalia, with her fingers in her vagina and pictures of her "boobs". K. W. advised that both suspects had chatted normally with her at first. However, after several chats, the tone had changed.

34. K. W. stated that suspect Pater Noster had asked to see her "boobs" first with her bra on and then with her bra off. He also asked to see her body and her "butt". She stated that this occurred within a short time after she started chatting with him. K. W. stated that she had shown him her naked "boobs" but that she had only shown him her "butt" and her body with her clothing on. After that, she stated that every time they chatted, several times a week, he asked to see her body or her "boobs". She thought that she had showed him her naked boobs at least 4-5 times.

35. During one of those chats, a few weeks after she started going to the private chat rooms with Pater Noster, she stated that he had taken her to the private chat room and that when it came up on her screen, his genitals including his penis were exposed. She stated that he was playing with himself and that his penis was "long and thicker." She stated that he played with himself until he "came" (ejaculated), cleaned himself with a towel and then showed it to her.

36. K. W. stated that Pater Noster masturbated on camera for her several more times during further chats. She stated that she wouldn't watch until he "came" each time though and would click out of the window.

37. Pater Noster would send K. W. messages telling her that he wanted to "come so bad" and that he wanted to "come" on her, if she liked what he was doing and what she saw.

38. K. W. stated she identified herself as a 13 year old girl to Pater Noster. She stated that he identified himself as being in his 30's, but that she thought that his age was closer to 45 years old. She also stated that Pater Noster had about 100 Facebook friends, but that his top friends were all really young looking girls. K. W. advised that she had "unfriended" him because he had started getting really aggressive, sending multiple messages about how beautiful she was and how he wanted to "come" on her, asking her why she didn't watch all the way through anymore.

39. Defendant Hendrickson wrote in a search warrant affidavit that she asked K. W. if she would be able recognize Pater Noster if she saw him again and that K. W. stated that she would. Defendant Hendrickson wrote in a search warrant affidavit that she showed K. W. a Photo Line-up Admonishment and showed K. W. the line-up and that K. W. stated that #3 (which contained a photograph of plaintiff J. N.) looked like the person she knew as "Pater" but that "Pater" was heavier and wore glasses.

40. K. W. stated that the contact with the two suspects had started shortly after she received a laptop computer as a gift for Christmas, but she was unsure exactly when. Defendant

1 Hendrickson initiated a forensic evidence search of the laptop
2 computer.

3     41. Since K. W. confirmed that multiple pictures of her
4 body had been sent to suspect Alex J., at his direction and with
5 his instructions as to specific pictures, Defendant Hendrickson
6 contacted the FBI Child Exploitation Unit in Sacramento. Special
7 Agent Scott Schofield stated that he would be investigating the
8 case involving Suspect James. SA Schofield put Defendant
9 Hendrickson in contact with Officers Solis and Noggle with the
10 Los Angeles Police Department's Internet Crimes Against Children
11 Federal Task Force.

12     42. Defendant Hendrickson confirmed with Officers Noggle
13 and Solis that their task force would be able to assist with the
14 service of a search warrant at plaintiff J. N.'s residence.
15 Officer Solis went out to plaintiff's residence to obtain the
16 description for the search warrant.

17     43. Defendant Hendrickson conducted checks in Accurint to
18 attempt to locate a current address for plaintiff J. N. and
19 located an address in Los Angeles, California, which appeared to
20 be the most current.

21     44. On 04-06-11, at approximately 1430 hours, Defendant
22 Hendrickson contacted the Los Angeles Department of Power and
23 Water and spoke with investigator J. R. White. Defendant
24 Hendrickson requested address verification for the Los Angeles
25 address and Mr. White confirmed that plaintiff J. N. lived at
26 that address.

27     45. On 04-11-11, after receiving consent from R/P Nicole
28 W., Defendant Hendrickson signed onto K. W.'s Facebook account

1  (Katie_baby75@yahoo.com) and changed the password. Defendant

2  Hendrickson viewed Pater Noster's Facebook page

3  (www.facebook.com/PaterNiki).  Pater Noster appeared at that

4  time to have almost 100 "friends" on Facebook.  The profile

5  pictures for the vast majority of the "friends" appeared to be

6  very young pre-teen to teenage girls.

7       46.   Defendant Hendrickson re-"friended" Suspect Noster,

8  with the intention of sending messages to him posing as

9  Victim Wray.  Within a few minutes, Suspect Noster instant-

10 messaged (IM'd) Victim W.'s account.  The following are

11 excerpts from the messages back and forth.

12      "Pater Noster":    awwwwwwwww

13                         AAWWWWWWWWWWW

14                         (10 lines of pink hearts)

15                         I MISSED YOU SOOOOOO MUCH!!!!!!!!!!!

16                         U almost killed me

17      "K. W.":      why?

18      "Pater Noster":    withdrawl of affection

19                         and it was so out of the blue I cudnt

20 even do or say anything

21                         I was really desperate

22      (later in the conversation)

23      "Pater Noster":    wow I really can feel I love u

24                         Its soo warm inside my tummy

25 now

26      "K. W.":      why

27      "Pater Noster":    cos I love you  maybe u will have

28 this feeling once too my

1                              iceprincess

2       "K. W.":      why is ur tummy warm

3       "Pater Noster":    u never had a crush on someone?  Its

4                          cribbling and warm inside

5       (a few messages later)

6       "Pater Noster":    ur soo my ideal girl

7       "K. W.":      how come?

8       "Pater Noster":    idk exactly   ur a mixture of all

9  things i love    great body,

10                            very cute face

11                            a bit slow         lush    ;)

12  southern actually

13      "K. W.":      lush?  I dont know wat that means

14      "Pater Noster":    that's wat i always called u haha,

15  cant you remember?

16                            Like amply, lavish, opulently

17  luxuriantly    flamboyant

18                      Haha   if you don't get it no matter,

19                      its really good tho and a big compliment

20                      8)

21      "K. W.":          gotta go..moms home….talk 2 u

22  2morrow?

23      "Pater Noster":    ok 8))  I love you    looking forward

24  to it 8))

25      47.  On 04-12-11, at approximately 1626 hours, defendant

26  Hendrickson logged into K. W.'s Facebook account. Pater

27  Noster was not signed on at that time. Defendant Hendrickson

28  sent him the following message and then logged off:

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

1   **Subject:**  None

2   **Date:**  4/12/2011  14:26 PM

3       sorry I was gone mom wouldn't let me on the computer.

4   8(

5       Defendant Hendrickson later received the following

6   message from Pater Noster:

7   **Subject:**  None

8   **Date:**      4/12/2011  4:45 PM

9       Ohhh thats sad baby ;?

10      i waited for u my loveliest of all (heart)

11      cant really describe my feelings for u but I wana cuddle

12  and things with you all day long hahah I love you, c u

13  tomorrow then 8) (heart)

14      48.  Defendant  Hendrickson  also  stated  in  the  search

15  warrant affidavit and it is alleged that she had been employed

16  by the SPD for more than 10 years working on sexual assault,

17  child  pornography  and  child  abuse/sexual  abuse  cases  and  a

18  variety  of  other  criminal  cases,  that  she  served  as  a  field

19  training  officer  training  new  police  officers,  that  she  had

20  worked as a decoy prostitute picking up "Johns", that she has

21  spoken  to  victims,  witnesses  and  perpetrators  of  crimes  about

22  how  crimes  were  perpetrated  and  how  evidence  was  concealed

23  and/or  disposed  of,  that  she  had  spoken  with  more  experienced

24  officers  who  have  explained  to  her  the  modus  operandi  of

25  suspects in the type of crimes that was the subject of the K. W.

26  investigation,  that  she  was  promoted  to  Detective  in  January

27  2007,  in  which  position  she,  *inter  alia*,  assisted  in  the

28  execution  of  search  warrants,  attended  80  hours  of  training  in

crime scene investigation, including search warrant preparation
and courtroom testimony, that in January 2011 she was assigned
to the Sexual Assault/Child Abuse Unit (SACA), that in February
2011 she attended a 40-hour course that included instruction in
the investigation of child abuse, sexual abuse and child
exploitation, and that in April 2011 she attended a child
abduction training course.

49.   Defendant Hendrickson wrote in the search warrant
affidavit that she had acquired the following knowledge:

- There are persons whose sexual objects are children.
  They receive sexual gratification and satisfaction from
  actual physical contact with children and from fantasy
  involving use of pictures, other photographic or art
  mediums, and writings on or about sexual activity with
  children.

- These people collect sexually explicit materials
  consisting of photographs, magazines, motion pictures,
  videos, books, diskettes, and slides depicting
  juveniles, which they use for their own sexual
  gratification and fantasy.

- These people use sexually explicit materials, including
  those listed above, for lowering the inhibitions of
  children, sexually stimulating children and themselves,
  and for demonstrating the desired sexual acts before,
  during, and after sexual activity with children. These
  people often correspond or meet with one another to
  share information and identities of their victims as a
  means of gaining status, trust, acceptance, and

psychological support.

- These people rarely destroy correspondence received from other people with similar interests unless they are specifically requested to do so.

- The majority of these people prefer contact with children of one sex and treat materials featuring the preferred sex as prized possessions.

- These people engage in activities or gravitate to programs which will be of interest to the type of victim they desire to attract and will provide them with access to these children.

- These people use such photos and videos as described above as a means of reliving fantasies or actual encounters with the depicted children.  They also utilize the photos as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling them to other people with similar interests.  These photos are carried and kept by these people as a constant threat to the child as blackmail and/or exposure.

- These people are afraid of discovery and often maintain and run their own photographic production and reproduction equipment.  This may be as simple as the use of "instant" photo equipment, such as digital cameras, Polaroid equipment, video equipment, photo color quality printers, or a completely outfitted photo lab.

- These people go to great lengths to conceal and protect

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

from discovery, theft, and damage, their collections of
illicit materials.  This often includes the rental or
use of safe deposit boxes or other storage facilities
outside their immediate residence.

- These people often collect, read, copy or maintain
  names, addresses, phone numbers, screen names, or lists
  of persons who have similar sexual interests.  These may
  have been collected by personal contact, and/or Internet
  contact, or through advertisements in various
  publications.  These contacts are maintained as a way of
  personal referral, exchange, and commercial profit.
  These people often correspond with others with the same
  interests through the use of computerized bulletin
  boards and "chat rooms."  These names may be maintained
  in the original publication, in phone-books, notebooks,
  or in computer hard drives, floppy disks, software or
  merely on scraps of paper.These people often keep the
  names of children they are involved with or with whom
  they have had sexual contact.  They maintain these names
  in much the same manner as described in the preceding
  paragraph for many of the same reasons.

- These people maintain diaries of their sexual encounters
  with children.  These accounts of their sexual
  experiences are used as a means of reliving the
  encounter when the offender has no children to molest.
  Such diaries might consist of a notebook, scraps of
  paper, or a formal diary.  Depending upon the resources
  available to the offender, they may be contained on

audiotape or computer entries into a home computer.

- These people cut pictures of children out of magazines, newspapers, books, and other publications that they use as a means of fantasy relationships. These "cutouts" help to identify the age and sexual preference of the person under investigation.

- These people collect books, magazines, newspapers, computerized visual images, and other writings on the subject of sexual activities with children. They maintain these as a way of understanding their own feelings toward children.

- These people use sexual aids, such as dildos, fashioned after a man's penis, of various sizes and shapes, in addition to other sexual aids in the seduction of their victims. They often use these as a means of exciting their victims and as a method for arousing the curiosity of the children.

- These people collect and maintain books, magazines, articles, and other writings on the subject of sexual activity. These books and materials may be on the topics of human sexuality and sexual education or consist of sexual manuals discussing or showing various sexual acts, positions, or sexual activities.

- These people often use drugs as a means of inducement to get a child to a particular location such as the offender's home. Alcohol is also used in this fashion. Both drugs and alcohol are also used as a means of seduction and for reducing the child's inhibitions for

1  sexual excitement.

2  • These people often collect and maintain artifacts,
3    statues, paintings, or other media that depict children
4    or young persons in nude poses or sexual acts.  These
5    are kept or "left" in places where the victims can find
6    or "discover" them.These people obtain and keep things
7    of interest to their victims.  They may consist of
8    magazines, books, and toys for the age level of the
9    victims they desire to attract and may be as complicated
10   as video games, video game systems, and computers.

11 • These people often keep mementoes of their relationships
12   with specific children as a means of remembrance.  These
13   may consist of underwear or other garments or things
14   that are unique to the relationship they had with the
15   child.

16 • These people obtain, collect, and maintain photographs
17   of children they have been involved with.  These
18   photographs may depict children fully clothed, in
19   various stages of undress, or totally nude, in various
20   activities, not necessarily sexually explicit.  These
21   photos are rarely, if ever, disposed of and are revered
22   with such  devotion that they are often kept upon the
23   individual's person, in wallets and on diskettes.  If a
24   picture of a child is taken by such a person, depicting
25   the child in the nude, there is a high probability the
26   child was molested before, during, or after the photo
27   taking session because the act of posing the child is a
28   great sexual stimulus for the individual.

1    • All of the materials requested for seizure may identify
2      children who are being sexually exploited through child
3      molestation and child pornography. The materials may
4      also identify other adults who are engaged in the sexual
5      exploitation of children by these means. In addition,
6      these materials may demonstrate the sexual proclivity,
7      inclination, preference, and activities of the person
8      under investigation, providing evidence that may tend to
9      show that the person under investigation has committed
10     felonies, to wit Penal Code sections 664/288(a), 311.1,
11     and 288.2.

12     50.   In the search warrant affidavit defendant Hendrickson
13  asserted that: "Based on [K.] W.'s statement that Suspect Noster
14  has displayed his genitals and masturbated on video, that he was
15  told that she was 13 years old, the multiple requests to see her
16  breasts and her body, of which she showed her naked breasts, the
17  messages seen by R/P [Nicole] W., and the correspondence between
18  Suspect Noster and myself, who he believed to be [K.] W., I
19  believe that evidence will be located during a search of Suspect
20  Noster and [K.] W.'s Facebook records.  Based on the chats that
21  I have conducted, the messages that I located during the search
22  of Victim W.'s Facebook page, and her statement that the
23  correspondence occurred through Facebook and through "Tiny Chat,
24  I believe there is sufficient probable cause to believe that
25  that crime of 288.2 PC – Distribution or Exhibition of Lewd
26  Material to a Minor, 288.3 PC – Contacting a Minor with the
27  Intent to Commit Certain Offenses and 311.11 – Possession or
28  Control of Matter Depicting Sexual Conduct of Person under Age

1  18 has occurred and that information obtained as a result of
2  this warrant will assist in the investigation of the crime."

3      51.  K. W. told defendant Hendrickson that during one of
4  the chats Pater Noster told K. W. that he lived in England.

5      52.  On or about March 31, 2011, defendant Hendrickson
6  assembled a six-pack photo array with plaintiff's photograph in
7  position three; the photo array was suggestive in violation of
8  the due process clause of the Constitution of the United States
9  because the plaintiff was the only person of the six persons
10  photographed wearing a white shirt.

11      53.  On March 31, 2011, defendant Hendrickson interviewed
12  K. W. on videotape.

13      54.  On March 31, 2011, defendant Hendrickson presented K.
14  W. with a photographic line-up admonition form but directed K.
15  W. to sign the form before she read the form.

16      55.  On March 31, 2011, defendant Hendrickson told K. W.
17  that she found a picture of the guy that "we think might be the
18  person" immediately before she showed the six-pack photo array
19  to K. W. and K. W. did not identify plaintiff as being Pater
20  Noster.

21      56.  On March 31, 2011, when defendant Hendrickson showed
22  the six-pack to K. W. and K. W. pointed to #3, the photograph of
23  plaintiff and stated "he is too skinny – the guy that I saw was
24  much chunkier"; after looking at the photographs for a few more
25  seconds, K. W. again pointed to photograph #3 and stated that
26  "that kind of looks like him," after which defendant Hendrickson
27  directed K. W. to circle #3, which she did.

28

57. Defendant Hendrickson made a false statement under oath in the search warrant affidavit when she wrote that K. W. stated that #3 (which contained a photograph of plaintiff) looked like Pater Noster.

58. Defendant Hendrickson made a false statement under oath when she omitted from the search warrant affidavit that K. W. stated that #3 "is too skinny . . . ."

59. On or about April 19, 2011, defendant Hendrickson wrote a search warrant affidavit and search warrant for the search of K. W.'s online account and Pater Noster's Facebook account.

60. During the period of time that K. W. was allegedly victimized Plaintiff had not set up, nor was he using, a Facebook account.

61. On or about August 15, 2011, and as a result of the actions of defendants, a seven count criminal complaint was filed against the Plaintiff in the Superior Court, State of California, County of Sacramento, wrongfully alleging violations and charging plaintiff with violations of California Penal Code §§ 288(a), 288.2(a), and 288.3.

62. On or about August 15, 2011, and as a result of the actions of defendants, an arrest warrant for the arrest of plaintiff was issued in the Superior Court, State of California, County of Sacramento.

63. On or about August 17, 2011, defendants Hendrickson and LeRose conducted a search of plaintiff's residence in Los Angeles County pursuant to a search warrant that was based on a false affidavit signed by defendant Hendrickson.

64. On or about August 17, 2011, and as a result of the actions of the defendants, defendants Hendrickson and LeRose caused the plaintiff J. N. to be arrested near his residence in Los Angeles County, after which he was imprisoned continuously until April 3, 2012, as a result of the actions of the defendants.

65. On or about August 17, 2011, defendant Hendrickson interviewed plaintiff and plaintiff told defendant Hendrickson that he had not committed the crimes committed against K. W. and that he had not used Facebook during the applicable time period.

66. Defendants seized plaintiff's computer and a check of this computer revealed that there no Facebook account registered on the hard drive of the computer and there was no evidence found on the computer that a Facebook account had ever been used on the computer.

67. On February 9, 2012, an in-person lineup was conducted and the 13-year-old K. W. was unable to identify the suspect in the line-up, which included plaintiff J. N.

68. All charges were dismissed against Plaintiff prior to any trial on the merits on or about February 15, 2012.

69. On or about February 15, 2012, Plaintiff was then transferred to the custody of the U. S. Department of Justice and/or the U. S. District Court for the Eastern District of California.

70. On or about February 23, 2012, the U. S. District Court for the Eastern District of California transferred the case of J. N. to the U. S. District Court for the Central District of California.

71.   On March 9, 2012, the U. S. District Court for the Central District of California ordered plaintiff detained and plaintiff was detained in the Central District of California.

72.   On April 2, 2012, the U. S. District Court for the Central District of California, on motion of the United States Attorney, ordered the case against plaintiff dismissed.

73.   Plaintiff was incarcerated with no justification for at least six (6) months from August 17, 2011.

74.   Plaintiff was released from continuous incarceration on April 3, 2012, when he was released from incarceration in the County of Los Angeles.

75.   As a result, Plaintiff suffered pain, fright, fear, embarrassment, humiliation, loss of liberty, as well as mental, emotional and physical injuries.

76.   Defendants later orchestrated the concealment and suppression of exculpatory evidence by failing to account for witnesses to the incident and by unlawfully providing false testimony.

77.   Despite the fact that the SPD, City of Sacramento, BRAZIEL, all policymakers and others knew, prior to August 15, 2011, that the individual defendant officers had on numerous occasions violated SPD rules, violated and deprived the rights of numerous arrestees and citizens by, *inter alia,* using excessive and unreasonable force against them, lying in police reports, committing perjury in preliminary examinations and other court proceedings, lying in other official documents, lying to superiors, lying to arrestees and citizens, concealing and suppressing exculpatory evidence, fabricating and planting

1  evidence, the defendants turned a blind eye to this knowledge,
2  failed to train the individual defendant officers, and were
3  complicit in and allowed the individual defendant officers to
4  further victimize numerous persons and to engage in all of the
5  heinous practices listed in this paragraph and in this pleading,
6  including, but not limited to, to lie, commit perjury, make
7  false statements in official reports, lie to superiors and other
8  officers, and to function as a cancer within the SPD, and they
9  failed to impose any meaningful discipline on the individual
10 defendant officers, covered up their severe depredations and
11 other sadistic and depraved conduct, they failed to train them
12 or to ensure that they followed SPD rules and policies, they
13 allowed them to flagrantly and brazenly violate SPD policies,
14 resulting in their creating a de facto policy approving,
15 supporting, lending succor to, fostering and ratifying and
16 acquiescing in the illegal and tortious conduct of the
17 individual defendant officers, resulting in the injuries
18 suffered by the Plaintiff during the Incident and thereafter and
19 her being maliciously prosecuted and imprisoned.

20     78. The injuries suffered by Plaintiff, *e.g.,* being
21 arrested and incarcerated without probable cause and maliciously
22 prosecuted were caused in part by the longstanding SPD policy,
23 practice and custom of having no oversight of its operations,
24 the failure to conduct any investigation into the chronic false
25 arrests and the use of excessive force by SPD personnel against
26 persons, and using the internal affairs bureau process to
27 further falsify and whitewash incidents of false arrest and the
28 use of excessive force.

79.   The defendants knew or should have known that there was no probable cause to arrest/charge plaintiff, Plaintiff J. N., with any crime.

80.   The defendants persisted in prosecuting Plaintiff J. N. in an effort to cover up the false arrest and use of unreasonable force by officers and to prevent Plaintiff J. N. from obtaining redress against the defendants and the City of Sacramento.

81.   As part of the conspiracy to falsely arrest and imprison and maliciously prosecute Plaintiff in order to, *inter alia*, cover up the severe, willful, despicable, base, vile, sadistic and criminal violation and deprivation of Plaintiff J. N.'s constitutional and human rights, defendants submitted false police reports lying about, concealing the truth of and fabricating about their interaction with Plaintiff during the Incident on or about August 17, 2011.

82.   Defendants BRAZIEL, DOE and unknown named defendants were instrumental in fostering the code of silence and culture of fear and deprivation of constitutional rights on a systemic and institutional basis by performing the duty of whitewashing all internal affairs complaints and arrestee complaints of wrongful arrests, beatings of arrestees and like infractions perpetrated by Sacramento police officers and employees, and did so in this case.

83.   The Defendants and, possibly, other of the defendants furthered their conspiracy to deprive Plaintiff of his civil and human rights by meeting, talking, scheming, and combining by themselves and deciding that at least one of them would testify

1  falsely under oath if necessary to keep the seizures and search
2  under wraps.

3      84.   The   defendants   met   alone   with   each   other,   and,
4  possibly, with other, unknown named defendants, and combined,
5  conversed,   and   planned   amongst   themselves   and   agreed,   with
6  knowledge   that   Plaintiff   was   deprived   of   his   constitutional
7  rights,   to   participate   in   the   continued   perpetration   of   the
8  actions   that   resulted   in   the   deprivation   of   the   Plaintiff's
9  constitutional rights, including, but not limited to agreeing to
10 fabricate   police   reports,   to   make   false   statements   to   other
11 police   officers,   to   fabricate   probable   cause,   to   suppress
12 exculpatory evidence, to commit perjury, and to present planted
13 evidence   having   as   their   goal   the   conviction,   punishment   and
14 imprisonment of Plaintiff J. N., and there was the commission of
15 an overt act in furtherance of the conspiracy or conspiracies,
16 e.g., the suppression of exculpatory evidence and falsification
17 of   the   police   reports   pertaining   to   the   seizure   and   search
18 authored   by   defendants,   and   approved   by   a   supervisorial
19 defendant.

20     85.   As part of the conspiracy to falsely imprison and
21 maliciously prosecute Plaintiff J. N. in order to, *inter alia,*
22 cover up the severe, willful, despicable, base, vile, sadistic
23 and criminal violation and deprivation of Plaintiff J. N.'s
24 constitutional and human rights, defendants submitted false
25 police   reports   lying   about,   concealing   the   truth   of   and
26 fabricating about their interaction with Plaintiff J. N. during
27 the Incident on or about August 30, 2011.

28     86.   [Reserved].

87.   On   information   and   belief,   Defendants   BRAZIEL   and unknown named defendants were instrumental in fostering the code of silence and culture of fear and deprivation of constitutional rights on a systemic and institutional basis by performing the duty   of   whitewashing   all   internal   affairs   complaints   and arrestee   complaints   of   beatings   of   arrestees,   detainees   and inmates and like infractions perpetrated by SPD police officers and employees, and did so in this case.

88.   On   information   and   belief,   the   Defendants   and, possibly, other of the defendants furthered their conspiracy to deprive Plaintiff J. N. of her civil and human rights by meeting,   talking,   scheming,   and   combining   by   themselves   and deciding that at least one of them would testify falsely under oath if necessary to keep the seizures and search under wraps.

89.   [Reserved]

90.   On   information   and   belief,   the   defendants   met   alone with   each   other,   and,   possibly,   with   other,   unknown   named defendants,   and   combined,   conversed,   and   planned   amongst themselves and agreed, with knowledge that Plaintiff J. N. was deprived of his constitutional rights, to participate in the continued   perpetration   of   the   actions   that   resulted   in   the deprivation   of   the   Plaintiff   J.   N.'s   constitutional   rights, including,   but   not   limited   to   agreeing   to   fabricate   police reports, to make false statements to other police officers, to fabricate probable cause, to suppress exculpatory evidence, to commit perjury, and to present planted evidence having as their goal   the   conviction,   punishment   and   imprisonment   of   Mr. Richardson,   and   there   was   the   commission   of   an   overt   act   in

1  furtherance of the conspiracy or conspiracies, e.g., the

2  suppression of exculpatory evidence and falsification of the

3  police reports pertaining to the seizure and search authored by

4  defendants, and approved by a supervisorial defendant.

5      91.   [Reserved]

6      92.   The illegal seizure and malicious prosecution of

7  Plaintiff J. N. occurred, at least in part, because the SPD and

8  its policymakers had/condoned/acquiesced in/was deliberately

9  indifferent to the existence of a policy/implicit

10 policy/practice/custom of unlawful seizure and malicious

11 prosecution to cover up illegal seizure, maintaining the code of

12 silence in the context of crimes committed and enforcing their

13 own code of silence within the LASD, and by failing to train

14 police officers in the correct and lawful methods of seizure;

15 Defendants County of Los Angeles and the SPD maintained and/or

16 maintain a custom, policy or practice, and or tacitly approved a

17 custom, policy or practice of acquiescing

18 in/encouraging/fostering/being deliberately indifferent

19 to/allowing/permitting and recklessly and/or intentionally

20 engaging in illegal seizure and use of excessive force, without

21 justification or excuse, in the use of excessive force against

22 inmates, and in the malicious and sadistic -- for the very

23 purpose of causing harm -- use of excessive force against

24 inmates.

25     93.   All supervisorial liability defendants, including, but

26 not limited to BRAZIEL, set in motion a series of events that

27 led to the unlawful arrest, incarceration and prosecution of

28 plaintiff, and, specifically, defendant BRAZIEL, the Chief of

1   Police of the SPD and overall supervisor of HENDRICKSON, and the
2   other supervisors specifically ratified the actual conduct of
3   defendant HENDRICKSON that is the subject of this action by (1)
4   specifically approving the decisions made by HENDRICKSON on
5   March 31, 2011, and thereafter, leading up to the arrest and
6   incarceration and prosecution of plaintiff, (2) specifically
7   approving of the bases for those decisions made by HENDRICKSON
8   and others, and (3) so ratifying and approving of the decisions
9   and bases for the decisions of HENDRICKSON by means of the
10  product of a conscious, affirmative choice to ratify the
11  decisions and conduct of HENDRICKSON, resulting in the false
12  arrest, the incarceration and the malicious prosecution of
13  plaintiff, and these conscious decisions on the part of
14  defendant BRAZIEL and his subordinate supervisors and
15  policymakers within the SPD have resulted in similar incidents
16  involving other innocent persons.

17      94.  Defendants violated Plaintiffs' constitutional rights,
18  as alleged herein above, by, among other things, failing to
19  train as follows, inter alia:

20      95.  Defendants CITY, SPD and BRAZIEL have ample reason to
21  know, based upon complaints, arrest reports, claims for damages,
22  and, *inter alia*, internal affairs reports and records, that
23  SPD's officers and/or employees regularly engage in the misdeeds
24  set forth throughout this complaint.

25      96.  CITY, SPD and/or BRAZIEL, each of them or any
26  combination of them were on actual or constructive notice that
27  the SPD training program/regimen contained lacunae and
28  deficiencies that caused SPD police officers to conduct

themselves in a manner that deprived people of their constitutional rights under the fourth and fourteenth amendments to freedom from unreasonable search and seizure, yet these defendants chose in the face of this knowledge to retain the deficient training program.

97. Thus, the defendants' policy of inaction to the deficiencies of the SPD training program constituted a decision on the part of the CITY, the SPD and BRAZIEL to violate the constitution.

98. Specifically, the SPD training program was fatally deficient in its failure to train SPD police officers (1) how to identify suspects who commit crimes via the Internet, (2) how to conduct computer forensic examinations of the internet and of computers to identify internet perpetrators, (3) how to interview witnesses to isolate critical details of an internet crime in order to eliminate as suspects persons who are innocent, (4) how to analyze Facebook and other internet application data in order to geographically locate suspects during a specific time frame, and *inter alia* (5) how to conduct photographic lineups.

99. Plaintiffs allege that these failures are the result of deliberate indifference on the part of Defendants CITY, SPD, and BRAZIEL by and through their decision makers and subordinates.

100. The foregoing unconstitutional failures to train were a direct and legal cause of harm to Plaintiff.

101. Defendants CITY and/or SPD implement a de facto policy, custom or practice or a hybrid of policy, custom and/or

practice or any combination thereof of fostering SPD police response to internet child sex crimes by (1) engaging in ruses and deception when interviewing persons of interest in an effort to extract false confessions instead of uncovering exculpatory information that would eliminate persons of interest as a suspect, (2) ignoring clues and evidence that point to the innocence of a person who has been arrested, (3) failing to obtain and properly review computer information seized from persons, (4) failing to understand internet technology, such as Facebook and chat room technology, and thus failing to use such technology in the investigation of crimes, (5) realizing that an innocent person may have been arrested, attempting to cover up mistakes by encouraging and facilitating the malicious prosecution of such persons by the District Attorney in order to launder mistakes made by the police, and (6) providing false information to the District Attorney in the course of prosecutions in order to cause the District Attorney to instituted prosecutions and continue to prosecute innocent persons.

102. The foregoing unconstitutional policies, practices and/or customs were a direct and legal cause of harm to Plaintiff.

103. Defendants BRAZIEL and RICHARD ROE acted in supervisory capacities with respect to the incidents involving decedent; as supervisors, Defendants BRAZIEL and RICHARD ROE acted intentionally, maliciously, in conscious disregard, and with deliberate indifference to the rights of the decedent and others similarly situated and these supervisory failures

directly caused and contributed to Plaintiffs' damages.

104. Defendants CITY's and SPD's failures to train, as described herein, were within the control of Defendants CITY and SPD and within the feasibility of Defendants CITY and SPD to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

105. On information and belief, the defendants combined, met separately, conversed, planned amongst themselves and, possibly, with other persons and unknown named defendants, and there was an agreement or understanding between or among such persons to engage in the conduct alleged herein to be wrongful, solely for the purpose of maliciously and sadistically, for the very purpose of causing harm, inflicting pain and suffering on Plaintiff J. N., and there was the commission of an overt act in furtherance of said conspiracy.

106. As a result of the defendants' conduct, which was perpetrated intentionally, recklessly, wantonly, fraudulently, oppressively, and or with reckless disregard for the rights of Plaintiff J. N. and others, and which is so despicable that it is despised by ordinary people, Plaintiff J. N. suffered all of the damages mentioned herein, including humiliation, fear, feelings of degradation and helplessness, sleeplessness, anguish, despair, fright, severe mental and emotional distress, depression, distrust, and embarrassment in violation of her federal constitutional rights and his rights under the laws of the State of California, and plaintiff is entitled to punitive damages.

## CLAIM FOR RELIEF ONE

## DEPRIVATION OF CONSTITUTIONAL RIGHTS —FOURTH/FOURTEENTH AMENDMENTS

## – CONSPIRACY – 42 U.S.C. § 1983

## Against all Sacramento Police Department Individual Defendants,

## Except BRAZIEL

107. At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures, were in force and effect and the individual defendants who engaged in conduct, as set forth above, who met, combined, conferred and formed an agreement amongst themselves to subject Plaintiff J. N. to unlawful search and seizure and who falsified search warrant affidavits, falsified the results of a photographic lineup, seized and subjected Plaintiff J. N. to illegal search and seizure, deprived Plaintiff J. N. of his constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution and did conspire to deprive Plaintiff J. N. of his rights and to cover up the aforesaid constitutional deprivations which proximately caused the severe and permanent injuries to Plaintiff J. N., by attempting to fabricate and by fabricating alleged facts to conceal their involvement in the illegal arrest of Plaintiff J. N. and the illegal prosecution of Plaintiff J. N., by suppressing and or concealing evidence, by agreeing to maintain a code of silence about the Incident to obfuscate the truth and hinder the discovery of the truth

1  surrounding the illegal arrest of Plaintiff J. N. and the
2  illegal prosecution of Plaintiff J. N., and by agreeing to
3  confuse, cloud and falsify facts pertaining to the assault of
4  Plaintiff J. N. in order to cover up the deprivation of
5  Plaintiff J. N.'s constitutional rights. The conspiracy was
6  furthered by toleration of the "code of silence" whereby one or
7  more conspirators purport(s) not to have perceived what occurred
8  to Plaintiff J. N. (or statements and admissions detrimental to
9  defendants) or misrepresents the occurrence to favor an accused
10 law enforcement officer.

11              **CLAIM FOR RELIEF TWO**

12    **DEPRIVATION OF CONSTITUTIONAL RIGHTS – FOURTH/FOURTEENTH**

13           **AMENDMENTS – 42 U.S.C. § 1983**

14 **Against all Sacramento Police Department Individual Defendants,**

15              **Except BRAZIEL**

16      108. At the time of the Incident set forth in the averments
17 above, the rights of persons within the jurisdiction of the
18 United States of America under both Amendment V and XIV to the
19 United States Constitution to due process of law and the equal
20 protection of the laws and under Amendment IV to be free from
21 unreasonable searches and seizures and excessive and
22 unreasonable force, were in force and effect and the individual
23 defendants who engaged in conduct, as set forth above, who
24 falsified search warrant affidavits, falsified the results of a
25 photographic lineup, seized and subjected Plaintiff J. N. to
26 illegal search and seizure, deprived Plaintiff J. N. of his
27 constitutional rights, which violated those rights, violated the
28 fourteenth amendment to the United States Constitution and did

1  conspire to deprive Plaintiff J. N. of his rights and to cover

2  up the aforesaid constitutional deprivations which proximately

3  caused the severe and permanent injuries to Plaintiff J. N., by

4  attempting to fabricate and by fabricating alleged facts to

5  conceal their involvement in the illegal arrest of against

6  Plaintiff J. N. and the illegal prosecution of Plaintiff J. N.,

7  by suppressing and or concealing evidence, by agreeing to

8  maintain a code of silence about the Incident to obfuscate the

9  truth and hinder the discovery of the truth surrounding the

10  illegal search and arrest of Plaintiff J. N. and the illegal

11  prosecution of Plaintiff J. N., and by agreeing to confuse,

12  cloud and falsify facts pertaining to the assault of Plaintiff

13  J. N. in order to cover up the deprivation of Plaintiff J. N.'s

14  constitutional rights. The conspiracy was furthered by

15  toleration of the "code of silence" whereby one or more

16  conspirators purport(s) not to have perceived what occurred to

17  Plaintiff J. N. (or statements and admissions detrimental to

18  defendants) or misrepresents the occurrence to favor an accused

19  law enforcement officer.

20  ## CLAIM FOR RELIEF THREE

21  ### DEPRIVATION OF CONSTITUTIONAL RIGHTS – FOURTH/FOURTEENTH

22  ### AMENDMENTS 42 U.S.C. § 1983

23  ### Against all Sacramento Police Department Supervisorial

24  ### Defendants

25  109. At the time of the Incident set forth in the averments

26  above, the rights of persons within the jurisdiction of the

27  United States of America under both Amendment V and XIV to the

28  United States Constitution to due process of law and the equal

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

1  protection of the laws and under Amendment IV to be free from
2  unreasonable searches and seizures and excessive and
3  unreasonable force, were in force and effect and the individual
4  defendants who engaged in conduct, as set forth above, who
5  seized and subjected Plaintiff J. N. to illegal search and
6  seizure, to the use of excessive force, and to cruel and unusual
7  punishment, deprived Plaintiff J. N. of his constitutional
8  rights, which violated those rights, violated the fourteenth
9  amendment to the United States Constitution and did conspire to
10 deprive Plaintiff J. N. of his rights and to cover up the
11 aforesaid constitutional deprivations which proximately caused
12 the severe and permanent injuries to Plaintiff J. N., by
13 attempting to fabricate and by fabricating alleged facts to
14 conceal their involvement in the illegal arrest and use of
15 unreasonable force against Plaintiff J. N. of Plaintiff J. N.
16 and the illegal prosecution of Plaintiff J. N., by suppressing
17 and or concealing evidence, by agreeing to maintain a code of
18 silence about the Incident to obfuscate the truth and hinder the
19 discovery of the truth surrounding the illegal arrest and use of
20 unreasonable force against Plaintiff J. N. of Plaintiff J. N.
21 and the illegal prosecution of Plaintiff J. N., and by agreeing
22 to confuse, cloud and falsify facts pertaining to the assault of
23 Plaintiff J. N. in order to cover up the deprivation of
24 Plaintiff J. N.'s constitutional rights. The conspiracy was
25 furthered by toleration of the "code of silence" whereby one or
26 more conspirators purport(s) not to have perceived what occurred
27 to Plaintiff J. N. (or statements and admissions detrimental to
28

1  defendants) or misrepresents the occurrence to favor an accused
2  law enforcement officer.

### CLAIM FOR RELIEF FOUR

### DEPRIVATION OF CONSTITUTIONAL RIGHTS – FOURTH/FOURTEENTH

### AMENDMENTS – 42 U.S.C. § 1983 – *MONELL/MUNICIPAL LIABILITY*

### Against any and all *Monell* Defendants

7  110. At the time of the Incident set forth in the averments
8  above, the rights of persons within the jurisdiction of the
9  United States of America under both Amendment V and XIV to the
10 United States Constitution to due process of law and the equal
11 protection of the laws and under Amendment IV to be free from
12 unreasonable searches and seizures were in force and effect and
13 the individual defendants who engaged in conduct, as set forth
14 above, who seized and subjected Plaintiff J. N. to illegal
15 search and seizure, to the use of excessive force, and to cruel
16 and unusual punishment, deprived Plaintiff J. N. of his
17 constitutional rights, which violated those rights, violated the
18 fourteenth amendment to the United States Constitution and did
19 conspire to deprive Plaintiff J. N. of his rights and to cover
20 up the aforesaid constitutional deprivations which proximately
21 caused the severe and permanent injuries to Plaintiff J. N., by
22 attempting to fabricate and by fabricating alleged facts to
23 conceal their involvement in the illegal arrest of Plaintiff J.
24 N., use of excessive force against Plaintiff J. N. and the
25 illegal prosecution of Plaintiff J. N., by suppressing and or
26 concealing evidence, by agreeing to maintain a code of silence
27 about the Incident to obfuscate the truth and hinder the
28 discovery of the truth surrounding the illegal seizure of

1  Plaintiff J. N. and the illegal prosecution of Plaintiff J. N.,

2  and by agreeing to confuse, cloud and falsify facts pertaining

3  to the assault of Plaintiff J. N. in order to cover up the

4  deprivation of Plaintiff J. N.'s constitutional rights. The

5  conspiracy was furthered by toleration of the "code of silence"

6  whereby one or more conspirators purport(s) not to have

7  perceived what occurred to Plaintiff J. N. (or statements and

8  admissions detrimental to defendants) or misrepresents the

9  occurrence to favor an accused law enforcement officer.

10                    **CLAIM FOR RELIEF FIVE**

11    **DEPRIVATION OF CONSTITUTIONAL RIGHTS – FOURTH/FOURTEENTH**

12       **AMENDMENTS – MALICIOUS PROSECUTION - 42 U.S.C. § 1983**

13  **Against all Sacramento Police Department Individual Defendants,**

14                **including all Supervisors and BRAZIEL**

15       111. At the time of the Incident set forth in the averments

16  above, the rights of persons within the jurisdiction of the

17  United States of America under both Amendment V and XIV to the

18  United States Constitution to due process of law and the equal

19  protection of the laws and under Amendment IV to be free from

20  unreasonable searches and seizures and malicious prosecution,

21  were in force and effect and the individual defendants who

22  engaged in conduct, as set forth above, who met, combined,

23  conferred and formed an agreement amongst themselves to subject

24  Plaintiff J. N. to malicious prosecution and who subjected

25  Plaintiff J. N. to malicious prosecution, deprived Plaintiff J.

26  N. of his constitutional rights, causing her to be incarcerated

27  and subjected to criminal prosecution in Case Nos. 11NF2644,

28  which violated those rights, violated the fourteenth amendment

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

1   to the United States Constitution and did conspire to deprive
2   Plaintiff J. N. of his rights and to cover up the aforesaid
3   constitutional deprivations which proximately caused the severe
4   and permanent injuries to Plaintiff J. N., by attempting to
5   fabricate and by fabricating alleged facts to conceal their
6   involvement in the illegal arrest of Plaintiff J. N. and the
7   illegal prosecution of Plaintiff J. N., by suppressing and or
8   concealing evidence, by agreeing to maintain a code of silence
9   about the Incident to obfuscate the truth and hinder the
10  discovery of the truth surrounding the illegal arrest of
11  Plaintiff J. N. and the illegal prosecution of Plaintiff J. N.,
12  and by agreeing to confuse, cloud and falsify facts pertaining
13  to the arrest and prosecution of Plaintiff J. N. in order to
14  cover up the deprivation of Plaintiff J. N.'s constitutional
15  rights. The conspiracy was furthered by toleration of the "code
16  of silence" whereby one or more conspirators purport(s) not to
17  have perceived what occurred to Plaintiff J. N. (or statements
18  and admissions detrimental to defendants) or misrepresents the
19  occurrence to favor an accused law enforcement officer.

20      112. BRAZIEL, the SPD and the City of Sacramento acquired
21  supervisory liability and/or *Monell* liability for the unlawful
22  seizure and the malicious prosecution through their knowledge of
23  the chronic use by SPD officers of ruses to attempt to extract
24  false confessions from arrestees and their use of booking
25  photographs to misrepresent evidence seized and their to use of
26  these tactics to instigate and institute false criminal charges
27  against arrestees in an effort to obtain a conviction that would
28

JEFF DOMINIC PRICE
SBN 165534
1512 16TH STREET, STE. 2
SANTA MONICA, CA 90404

1  nullify any civil liability and/or responsibility for the of

2  unlawful seizure.

### CLAIM FOR RELIEF SIX

### DEPRIVATION OF CONSTITUTIONAL RIGHTS - FOURTH/FOURTEENTH

### AMENDMENTS 42 U.S.C. § 1983

### Against all Sacramento Police Department Supervisorial

### Defendants

8  113. At the time of the Incident set forth in the averments

9  above, the rights of persons within the jurisdiction of the

10  United States of America under both Amendment V and XIV to the

11  United States Constitution to due process of law and the equal

12  protection of the laws and under Amendment IV to be free from

13  unreasonable searches and seizures and excessive and

14  unreasonable force, were in force and effect and the individual

15  defendants who engaged in conduct, as set forth above, who

16  seized and subjected Plaintiff J. N. to illegal seizure, to the

17  use of excessive force, and to cruel and unusual punishment,

18  deprived Plaintiff J. N. of his constitutional rights, which

19  violated those rights, violated the fourteenth amendment to the

20  United States Constitution and did conspire to deprive Plaintiff

21  J. N. of his rights and to cover up the aforesaid constitutional

22  deprivations which proximately caused the severe and permanent

23  injuries to Plaintiff J. N., by attempting to fabricate and by

24  fabricating alleged facts to conceal their involvement in the

25  illegal arrest and use of unreasonable force against Plaintiff

26  J. N. of Plaintiff J. N. and the illegal prosecution of

27  Plaintiff J. N., by suppressing and or concealing evidence, by

28  agreeing to maintain a code of silence about the Incident to

1   obfuscate the truth and hinder the discovery of the truth

2   surrounding the illegal arrest and use of unreasonable force

3   against Plaintiff J. N. of Plaintiff J. N. and the illegal

4   prosecution of Plaintiff J. N., and by agreeing to confuse,

5   cloud and falsify facts pertaining to the assault of Plaintiff

6   J. N. in order to cover up the deprivation of Plaintiff J. N.'s

7   constitutional rights. The conspiracy was furthered by

8   toleration of the "code of silence" whereby one or more

9   conspirators purport(s) not to have perceived what occurred to

10  Plaintiff J. N. (or statements and admissions detrimental to

11  defendants) or misrepresents the occurrence to favor an accused

12  law enforcement officer.

13              **CLAIM FOR RELIEF SEVEN**

14       **DEPRIVATION OF CONSTITUTIONAL RIGHTS – FOURTH/FOURTEENTH**

15       **AMENDMENTS – 42 U.S.C. § 1983 – *MONELL*/MUNICIPAL LIABILITY***

16              **Against any and all *Monell* Defendants**

17       114. At the time of the Incident set forth in the averments

18  above, the rights of persons within the jurisdiction of the

19  United States of America under both Amendment V and XIV to the

20  United States Constitution to due process of law and the equal

21  protection of the laws and under Amendment IV to be free from

22  unreasonable searches and seizures were in force and effect and

23  the individual defendants who engaged in conduct, as set forth

24  above, who seized and subjected Plaintiff J. N. to illegal

25  seizure, to the use of excessive force, and to cruel and unusual

26  punishment, deprived Plaintiff J. N. of his constitutional

27  rights, which violated those rights, violated the fourteenth

28  amendment to the United States Constitution and did conspire to

1  deprive Plaintiff J. N. of his rights and to cover up the
2  aforesaid constitutional deprivations which proximately caused
3  the severe and permanent injuries to Plaintiff J. N., by
4  attempting to fabricate and by fabricating alleged facts to
5  conceal their involvement in the illegal arrest of Plaintiff J.
6  N., use of excessive force against Plaintiff J. N. and the
7  illegal prosecution of Plaintiff J. N., by suppressing and or
8  concealing evidence, by agreeing to maintain a code of silence
9  about the Incident to obfuscate the truth and hinder the
10 discovery of the truth surrounding the illegal seizure of
11 Plaintiff J. N. and the illegal prosecution of Plaintiff J. N.,
12 and by agreeing to confuse, cloud and falsify facts pertaining
13 to the assault of Plaintiff J. N. in order to cover up the
14 deprivation of Plaintiff J. N.'s constitutional rights. The
15 conspiracy was furthered by toleration of the "code of silence"
16 whereby one or more conspirators purport(s) not to have
17 perceived what occurred to Plaintiff J. N. (or statements and
18 admissions detrimental to defendants) or misrepresents the
19 occurrence to favor an accused law enforcement officer.

## CLAIM FOR RELIEF EIGHT

### DEPRIVATION OF CONSTITUTIONAL RIGHTS –

### FOURTH/FIFTH/SIXTH/FOURTEENTH AMENDMENTS – FABRICATION OF EVIDENCE

### – 42 U.S.C. § 1983

### Against all Long Beach Defendants

25     115. At the time of the Incident set forth in the averments
26 above, the rights of persons within the jurisdiction of the
27 United States of America under both Amendment V and XIV to the
28 United States Constitution to due process of law and the equal

1   protection of the laws, under Amendment IV to be free from

2   unreasonable searches and seizures, and malicious prosecution,

3   and under Amend. VI to, *inter alia,* a fair trial, were in force

4   and effect and the individual defendants who engaged in conduct,

5   as set forth above, and also met, combined, conferred and formed

6   an agreement amongst themselves to subject Plaintiff to

7   malicious prosecution and who fabricated evidence that led to

8   the arrest, imprisonment and prosecution of Plaintiff, deprived

9   Plaintiff of his constitutional rights, causing him to be

10  incarcerated and subjected to criminal prosecution, which

11  violated those rights, violated the fourteenth amendment to the

12  United States Constitution.

### CLAIM FOR RELIEF NINE

### DEPRIVATION OF CONSTITUTIONAL RIGHTS – FIFTH/SIXTH/FOURTEENTH AMENDMENTS – SUPPRESSION OF EXCULPATORY EVIDENCE IN VIOLATION OF *BRADY V. MARYLAND* – 42 U.S.C. § 1983

### Against all Long Beach Defendants

18      116. At the time of the Incident set forth in the averments

19  above, the rights of persons within the jurisdiction of the

20  United States of America under both Amendment V and XIV to the

21  United States Constitution to due process of law and the equal

22  protection of the laws and under Amend. VI to, *inter alia,* a

23  fair trial were in force and effect and the individual

24  defendants who engaged in conduct, as set forth above, who met,

25  combined, conferred and formed an agreement amongst themselves

26  to suppress exculpatory evidence and subjected Plaintiff to

27  prosecution, deprived Plaintiff of his constitutional rights,

28  causing him to be incarcerated and subjected to criminal

1  prosecution,  which  violated  those  rights,  violated  the

2  fourteenth amendment to the United States Constitution.

3

4                              PRAYER

5      WHEREFORE, plaintiff prays for judgment against these

6  defendants, and each of them, as follows:

7      1.   For special damages for legal, medical and related

8  expense, according to proof;

9      2.   For general damages according to proof;

10     3.   For punitive damages against the individual defendants

11  in an amount sufficient to make an example of them and to deter

12  others;

13     4.   For declaratory relief;

14     5.   For reasonable attorney fees pursuant to 42 U.S.C. §

15     1988;

16     6.   For plaintiff's costs of suit herein;

17     7.   For such other and further relief as this Court deems

18  just.

19  Dated: March __31_, 2014

20                         _____
                            Jeff Dominic Price
21                          Attorney for Plaintiff

22                         DEMAND FOR JURY

23     The plaintiff demands trial by jury of all issues.

24

25                         _____
                            Jeff Price
                            Attorney for Plaintiff
26

27

28