Jeff Dominic Price | SBN 165534
2500 Broadway, Suite 125
Santa Monica, California 90404
jeff.price@mac.com
Tel. 310.451.2222/Fax 888.470.0890

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. N.,<br><br>    Plaintiff,<br><br>vs.<br><br>DETECTIVE HEATHER HENDRICKSON et al.,<br><br>    Defendants. | No. 2:14-CV-02428-DDP(PLAx)<br><br>PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW<br><br>FPTC:   October 31, 2016<br>TIME:   11:00 a.m.<br>TRIAL:  November 8, 2016 |

## Introduction

Early in the morning on August 17, 2011, J. N. was waiting for the bus on Woodman Avenue, Panorama City, to go to work. Suddenly, several vehicles drove up towards the curb at a high rate of speed and men jumped out of the vehicles and pointed firearms at him and yelled at him to get down. J. N. immediately dropped to the ground. He was placed under arrest. Defendant Hendrickson, then a Sacramento Police Department detective, who caused J. N. to be arrested on August 17, 2011, was present in the vicinity. She questioned J. N. He did not know what Detective Hendrickson was investigating. J. N. talked with Detective Hendrickson and informed her that he was not the person she was looking for. Detective Hendrickson ignored J. N., who was transported to jail and subsequently to jail in Sacramento,

1 -   **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

California, where he stayed in protective custody until February 15, 2012. He was finally released from custody on April 2, 2012.

Defendant Hendrickson arrested J. N. after she presented a police report containing false information and material omissions, which was attached to an arrest warrant declaration, to a Superior Court Judge, who, based upon Hendrickson's report, signed an arrest warrant. Defendant Hendrickson then continued to maliciously prosecute J. N. until February 15, 2012, when the felony charges against him were dismissed on motion of the District Attorney on the basis of insufficient evidence.

## Statement of Facts

### 1. Katelynn Wray, 12 years old, is victimized via the internet.

Katelynn Wray was 12 years old in February and March 2011 when she entered online chat rooms through Facebook. In February 2011 Ms. Wray accepted a private webcam chat with Alex James. When she clicked on the webcam link she saw James exposing his penis. Approximately 2-3 weeks later James again initiated contact with Katelynn Wray, telling Ms. Wray that he wanted to see her naked. Ms. Wray accepted a private webcam chat with James and showed him her breasts and vagina. She ended the webcam chat when James began to play with his penis. James was a white male approximately 17-18 years old. Later in February 2011 Katelynn Wray was in a Facebook chatroom when Pater Noster entered the chatroom and invited her to a private chat. Pater Noster went Ms. Wray a private webcam link and she accepted it. Pater Noster told Ms. Wray that she was beautiful and that he wanted to see her naked and then exposed his penis to Ms. Wray. Ms. Wray ended the chat. Pater Noster again began chatting with Ms. Wray and told her that he would stop bugging her if she showed him her body. Ms. Wray accepted a webcam chat with Pater Noster and showed him her breasts. Pater Noster then exposed his penis to Ms. Wray, who ended the chat. Pater Noster was a white male approximately 40-50 years

old.

## 2. The Sacramento Police Department investigation.

On March 26, 2011, Katelynn Wray's mother, Nicole Wray, contacted the Sacramento Police Department and reported the activities of Alex James and Pater Noster. On March 31, 2011, Defendant Hendrickson was assigned to investigate the case involving Katelynn Wray.

Defendant Hendrickson interviewed Katelynn Wray on March 31, 2011. The interview was videorecorded.

During the interview Defendant Hendrickson presented Ms. Wray, then 12 years old, with a photographic lineup that included a photograph of Plaintiff in position No. 3 and told Ms. Wray that she had found a picture of a guy "who we think might be the person – so I want to show it to you to see if it is." Ms. Wray first pointed to the person in position No. 1 and said "he's too dark." Ms. Wray next pointed to the photograph of Plaintiff and stated: "He's too skinny – the guy I saw was much chunkier." Ms. Wray then pointed to the photograph of Plaintiff and stated: "That kind of looks like him. The rest of them don't even look close to him." Exhibit 30; Exhibit 30A.

On April 6, 2011, FBI Special Agent Scott Schofield served a subpoena on Facebook, Inc., requesting information on the identity of Pater Noster and the Facebook account of PaterNiki, the account used by Pater Noster to communicate with Katelynn Wray. Defendant Hendrickson was aware that the FBI served this subpoena, but she failed to follow up on it. On April 20, 2011, Facebook, Inc., produced information in response to the subpoena. The information included the IP address of Pater Noster's device, which located the device in Austria.

Defendant Hendrickson did not follow up with the FBI about the subpoena. She conducted no further investigation into the crime or the identity of Pater Noster after approximately April 19, 2011.

### 3. The arrest warrant and search warrant.

On August 15, 2011, Defendant Hendrickson presented a search warrant for Plaintiff's residence in Los Angeles and an arrest warrant for the arrest of Plaintiff to Sacramento County Superior Court Judge Gary E. Ransom.

Defendant Hendrickson executed an affidavit that was attached to the search warrant. Attached to the Declaration in Support of Arrest Warrant, which was submitted to Judge Ransom, was Defendant Hendrickson's 6-page supplemental report.

Defendant Hendrickson omitted from the supplemental report attached to the Declaration in Support of Arrest Warrant information provided by the victim, Katelynn Wray, during the photographic lineup on March 31, 2011. Defendant Hendrickson also falsified statements made by Ms. Wray during the photographic lineup and included those falsified statements in the supplemental report that was presented to Judge Ransom.

Defendant Hendrickson omitted from her supplemental report and search warrant affidavit information obtained from Facebook, Inc. pertaining to the identity of the perpetrator, Pater Noster, in response to a subpoena served on Facebook, Inc. by FBI Special Agent Scott Schofield.

As a result of Defendant Hendrickson's omission of information from the supplemental report that was attached to the Declaration in Support of Arrest Warrant and her falsification of information in the supplemental report, Judge Ransom issued a search warrant and arrest warrant on August 15, 2011.

On August 15, 2011, Plaintiff was charged in a criminal complaint with four counts of Penal Code § 288a, two counts of Penal Code § 288.2(a), and one count of Penal Code § 288.3, and Defendant Hendrickson obtained an arrest warrant for Plaintiff's arrest. The Warrant was executed on August 17, 2011. Plaintiff remained incarcerated in Sacramento until February 15, 2012, when the charges brought

against him in Sacramento County were dismissed. He was then transferred to federal custody because he was on supervised release in the Central District of California. He was finally released from custody on April 3, 2012, seven and a half months after his arrest.

### 4. The execution of the warrants in Los Angeles.

On August 16, 2011, Defendant Hendrickson drove to Los Angeles with Detective LeRose and met with various law enforcement officials, including members of the Los Angeles Police Department. Early in the morning on August 17, 2011, Plaintiff was at the bus stop near his residence on his way to work when he was arrested at gunpoint by numerous police officers.

After the arrest Defendant Hendrickson interviewed Plaintiff, who denied knowing anything about Katie Wray and denied having a Facebook account. Defendant Hendrickson and Detective LeRose searched Plaintiff's apartment and seized numerous items, including Plaintiff's computer and numerous CDs.

Plaintiff was arrested in Los Angeles and extradited to Sacramento, where he was charged with four counts of Penal Code § 288a, two counts of Penal Code § 288.2(a), and one count of Penal Code § 288.3.

### 5. The prosecution.

Plaintiff was prosecuted from August 17, 2011, until February 15, 2012, when charges were dismissed on motion of the District Attorney, who moved to dismiss the case on the basis of insufficiency of evidence.

A preliminary hearing was continued numerous times and was never held.

On January 17, 2012, the prosecutor, Deputy District Attorney Kevin Jones, told Defendant Hendrickson in an email that the District Attorney's office was becoming worried about the case because "it comes down to her ID of him, which is 'it kinda looks like him, but he was heavier and wore glasses." Defendant Hendrickson did not respond.

5 -   **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

6. **The in-person lineup and dismissal of the prosecution.**

On February 9, 2012, an in-person lineup was conducted. Katelynn Wray was unable to identify anyone in the lineup, which included Plaintiff. That same day Deputy District Attorney Kevin Jones discussed dismissing the case against Plaintiff with his supervisor, Deputy District Attorney Anne Marie Schubert.

The case was dismissed on motion of the District Attorney on February 15, 2012.

Plaintiff was not released from custody because he was transferred to federal custody, as he had been on supervised release in Case No. 04-CR-00621-SVW until November 4, 2011. The district court had issued a warrant for Plaintiff's arrest on September 8, 2011, on the basis of the charges brought against Plaintiff in Sacramento County. Plaintiff was transferred to the Central District of California in February 2012. He was detained pending resolution of the supervised release violation charges. On April 2, 2012, the supervised release violation was dismissed and Plaintiff was released from custody on April 3, 2012.

7. **Injuries.**

Plaintiff was incarcerated for 7-½ months – 231 days – as a result of Defendant Hendrickson's actions. He suffered fear, humiliation, grief, embarrassment, anxiety, and, inter alia, emotional distress as a result of being prosecuted and as a result of his incarceration. He was designated as a child molester in jail and was constantly at risk of being attacked or killed by other inmates.

Plaintiff lost $20,280 in wages and he lost his apartment, and many of his belongings, and sustained at least $28,980 in other losses.

(a) **Plaintiff's Claims Against Defendants**

**Claim 1**: Defendant Hendrickson violated Plaintiff's Fourth Amendment rights by obtaining an arrest warrant that was invalid because it was obtained by deceiving the issuing judge with statements that were false to Defendant's

knowledge or as to which Defendant was reckless as to truth or falsity and by omitting material information from the Warrant affidavit.

**Claim 2**: Defendant Hendrickson violated Plaintiff's Fourteenth Amendment rights by maliciously prosecuting Plaintiff.

**Claim 3**: Defendant Hendrickson violated Plaintiff's Fourteenth Amendment rights by initiating and continuing a criminal prosecution against plaintiff by fabricating evidence, when she knew or should have known that plaintiff was innocent.

**(b)     The elements required to prove Plaintiff's claims**

**Claim 1 (Fourth Amendment Obtaining Arrest Warrant that was invalid because of Judicial Deception):**

1. Defendant Hendrickson acted under color of law.
2. To obtain a warrant to arrest Plaintiff Detective Hendrickson made a police report that was attached to the probable cause affidavit which contained false statements or omitted material facts.
3. Det. Hendrickson knew that the statements in the report attached to the probable cause affidavit were false or was reckless as to their truth or falsity.
4. Det. Hendrickson failed to include in the report attached to the probable cause declaration facts which she knew or should have known and which were material to the issuance of the warrant.
5. The Magistrate would not have issued the warrant if the probable cause declaration had not contained the false information and/or if it had contained the material true information.
6. Plaintiff was harmed by the issuance of the warrant.

Authority: *Malley v. Briggs,* 475 U.S. 335 (1986); *Chism v. Washington,* 661 F.3d 380, 393 (9th Cir. 2011); *Branch v. Tunnell,* 937 F.2d 1382 (9th Cir. 1991).

**Claim 2**: **(Malicious Prosecution):**

1. Defendant Hendrickson acted under color of law.
2. Defendant Detective Hendrickson intended to deprive Plaintiff of his Constitutional Rights, by prosecuting and continuing to prosecute Plaintiff with malice.
3. Det. Hendrickson lacked probable cause. The criminal prosecution was induced by or continued by fraud, corruption, perjury, fabricated evidence (such as false police reports) or wrongful conduct (i.e., whether Defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, or concealed exculpatory evidence) that was actively instrumental in causing the initiation or the continuance of the legal proceedings.
4. The prior proceedings "terminated in such a manner to indicate Plaintiff's innocence."
5. Plaintiff was harmed by the prosecution.

Authority: *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067 (9th Cir. 2004).

"When such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as a result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining this action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was no inconsistent with his guilt." *Awabdy,* 368 F.3d at 1067.

**Claim 3**: **(Fabrication of Evidence):**

1. Defendant Hendrickson acted under color of law.
2. Detective Hendrickson made false statements in a police report that constituted fabrication of evidence and deprived plaintiff of due process.
3. Detective Hendrickson continued the investigation of plaintiff despite the fact that she knew or should have known that plaintiff was innocent or used investigative

8 -   PLAINTIFF'S MEMORANDUM OF CONTENTIONS
      OF FACT AND LAW

techniques that were so abusive and coercive that she knew that such techniques would yield false information.

4. Plaintiff was harmed.

**(c)  In brief, the key evidence Plaintiff relies on for each claim**

**Claim 1**:

1. Admitted.

2. Testimony of Defendant Hendrickson, Scott Schofield, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, Plaintiff, discovery responses by Defendant Hendrickson, exhibits, including the police report written by Defendant Hendrickson, the recorded interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant, statements in emails by Defendant Hendrickson, and, *inter alia,* Anne Marie Schubert, Kevin Jones, Scott Schofield.

3. Testimony of Defendant Hendrickson, Scott Schofield, discovery responses by Defendant Hendrickson, exhibits, including the recorded interview of Katelynn Wray and the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant..

4. Testimony of Defendant Hendrickson, Scott Schofield, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, Plaintiff, discovery responses by Defendant Hendrickson, exhibits, including the recorded interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant.

5. N/A

6. Plaintiff and Plaintiff's sister.

**Claim 2**:

1. Admitted.

9 -  **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

2. Testimony of Defendant Hendrickson, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, Plaintiff, discovery responses by Defendant Hendrickson, exhibits, including the police report written by Defendant Hendrickson, the recorded interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant.

3. Testimony of Defendant Hendrickson, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, discovery responses by Defendant Hendrickson, exhibits, including the police report written by Defendant Hendrickson, the recorded interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant.

4. Testimony of Defendant Hendrickson, Anne Marie Schubert, Kevin Jones, Plaintiff, discovery responses by Defendant Hendrickson, exhibits, including the transcript of the hearing at which the case was dismissed.

5. Plaintiff.

**Claim 3**:

1. Admitted.

2. Testimony of Defendant Hendrickson, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, Plaintiff, discovery responses by Defendant Hendrickson, exhibits, including the police report written by Defendant Hendrickson, the recorded interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant.

3. Testimony of Defendant Hendrickson, Anne Marie Schubert, Kevin Jones, John Tefft, Ben Levitan, discovery responses by Defendant Hendrickson, exhibits, including the police report written by Defendant Hendrickson, the recorded

interview of Katelynn Wray, the Arrest Warrant and the Declaration in Support of Arrest Warrant, and the Search Warrant and the Affidavit in support of the Search Warrant.

4. Plaintiff.

**(d)  Defendants' counterclaims and affirmative defenses**:

Defendants do not have any counterclaims or affirmative defenses.

**(e)  The elements required to establish Defendants' affirmative defenses**

Not applicable.

**(f)  In brief, the key evidence Plaintiff relies on to oppose Defendants' affirmative defense:**

Not applicable.

**(g)  Similar statements for all third parties**

None.

**(h)  Anticipated evidentiary issues:**

Defendant Hendrickson failed to respond to Plaintiff's Request for Admissions, Set Four (inadvertently labeled Set Three), served on November 12, 2015, within 30 days of service, as required by Fed. R. Civ. P. 36. In February 2016 Defendant's counsel acknowledged in writing that he had received the requests but had not responded. The matters are deemed admitted. Fed. R. Civ. P. 36(a). Rule 36(a) is self-executing. *F.T.C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002). However, Defendant's counsel served responses to the requests, but did not file a motion to withdraw or amend the admitted matters. Thus, the matters in Plaintiff's Request for Admissions, Set Four, are deemed admitted. "Once a matter has been deemed admitted under Rule 36, even by default, the court may not consider evidence that is inconsistent with the admission." *Am. Gen. Life & Acc. Ins. Co. v. Findley*, 2013 U.S. Dist. LEXIS 41644, 2013 WL 1120662, at *3 (C.D. Cal. Mar. 15, 2013) (citing *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985),

11 -  PLAINTIFF'S MEMORANDUM OF CONTENTIONS
         OF FACT AND LAW

*Cook v. Allstate Ins. Co.*, 337 F. Supp. 2d 1206, 1210 (C.D. Cal. 2004)). "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958)); *Layton v. Int'l Ass'n of Machinists & Aerospace Workers*, 285 F. App'x 340, 341 (9th Cir. 2008)).

**(i) Issues of law**:

Plaintiff is not currently aware of any major legal issues other than those addressed in plaintiff's motions in limine.

**Bifurcation of Issues**: Local Rule 16-4.3

Plaintiff does not oppose bifurcation as to the amount of punitive damages. Plaintiff has addressed other bifurcation issues in motions in limine.

**Jury Trial**: Local Rule 16-4.4

All issues are triable to a jury as of right, and all parties have timely demanded a jury trial.

**Attorneys' Fees**: Local Rule 16-4.5

Plaintiff claims attorney fees pursuant to 42 U.S.C. § 1988, which provides that a prevailing plaintiff is entitled to attorney fees in an action pursuant to 42 U.S.C. § 1983.

**Abandonment of Issues**: Local Rule 16-4.6

Plaintiff has abandoned the municipal liability claims.

DATED: October 11, 2016         JEFF DOMINIC PRICE, Esq.

                                            /s/
                               By:   Jeff Dominic Price
                               Attorney for Plaintiff

## Proof of Service

I, Jeff Price, declare that I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to the within action. My business address is 2500 Broadway, Suite 125, Santa Monica, California 90404.

On October 11, 2016, I served the foregoing documents, described as PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [*J. N. v. Hendrickson et al.*, 2:14-CV-02428-DDP-PLAx] on counsel for the interested parties in this action:

☒ by transmitting a true copy thereof/placing a true copy thereof enclosed in a sealed envelope addressed to:

*See* Attachment

☐ by mail as follows: Pursuant to the business practice at my place of business, under which correspondence so collected and processed is deposited with the United States Postal Service that same day with postage fully prepaid at Santa Monica, California in the ordinary course of business.

☒ by Email on October __11__, 2016, as follows: I delivered such document by email via CM/ECF to the attorneys for the following parties: See Attachment.

Executed on October __11__, 2016, at Santa Monica, California.

☒ I declare under penalty of perjury that the foregoing is true and correct.

/s/
J. PRICE

## **Attachment**

Sean D. Richmond, Sr. Deputy City Attorney
915 I Street, Room 4010
Sacramento, California  95814
Attorneys for Defendants