|   |   |
|---|---|
| | **O** |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J.N., | ) | Case No. 2-14-cv-02428-DDP (PLAx) |
| | ) | |
| Plaintiff, | ) | **ORDER RE: ATTORNEY'S FEES** |
| | ) | |
| v. | ) | [Dkt. 149] |
| | ) | |
| DET. HEATHER M. HENDRICKSON, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Presently before the court is Plaintiff J.N.'s Motion for Attorney's Fees. (Dkt. 149.) After reviewing the parties' submissions and hearing oral argument, the court adopts the following Order.

**I. BACKGROUND**

Plaintiff J.N. filed the instant action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment Rights on the basis of judicial deception and malicious prosecution by Defendant Det. Heather Hendrickson. (*See* Third Amended Complaint.) The court assumes the parties' familiarity with the facts, which

have been set forth in greater detail in the court's Order granting Defendant's Motion for Remittitur. (*See* Dkt. 167.)

In brief, Plaintiff J.N. brought this action following his arrest and detention on felony charges from August 2011 to April 2012. The charges pertained to sex crimes perpetrated on Facebook by a man with the user name "Pater Noster" against then 12-year-old K.W. The victim's mother reported the incidents to the Sacramento Police Department, which assigned the case to Defendant Det. Heather Hendrickson. Det. Hendrickson soon identified Plaintiff J.N. as the primary suspect. Plaintiff asserts that Defendant's investigation was characterized by several errors, including a suggestive admonition during a photographic lineup with K.W. that led to a tainted identification and a failure to follow-up with a requested FBI subpoena that would have revealed Pater Noster's computer IP address originated in Austria. On the basis of this investigation, Defendant prepared a search and arrest warrant application, which she submitted to a judge. The warrants were approved and Plaintiff was taken into custody in August 2011. In February 2012, the charges were ultimately dismissed after K.W. failed to identify Plaintiff as Pater Noster at a live lineup. Plaintiff was released from custody in April 2012.

The Third Amended Complaint asserts violations of Plaintiff's Fourth and Fourteenth Amendment rights on the basis of judicial deception, malicious prosecution, fabrication of evidence, and suppression of exculpatory evidence. Initially, Plaintiff sued Det. Hendrickson, her supervisor, and the deputy District Attorney handling the case, and alleged *Monell* claims for municipal liability. The court dismissed the claims against the deputy District Attorney and Plaintiff dismissed all remaining Defendants other than Det. Hendrickson prior to trial. The case went to trial and a jury found in favor of Plaintiff on his claims for judicial deception and malicious prosecution. The jury awarded Plaintiff $5 million in compensatory damages and $5,000 in punitive damages. After the verdict, Defendant moved for a new trial or, in the alternative, remittitur of the damages verdict. The court denied Defendant's motion for new trial on liability. However, the

court found that the jury verdict was excessive and granted a remittitur to reduce the verdict to $3,000,000. Plaintiff accepted the remittitur. Plaintiff now moves for reasonable attorneys' fees.

**II. LEGAL STANDARD**

A district court may, in its discretion, award a reasonable attorney's fee to the prevailing party in section 1983 litigation. 42 U.S.C. § 1988(b). Under section 1988, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal citations and quotations omitted). A plaintiff "prevails" when there is a material alteration of the legal relationship between the parties that modifies the defendant's behavior in a way that directly benefits the plaintiff. *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Courts should exclude hours that were not reasonably expended from the initial fee calculation. *Id.* at 434. There is a strong presumption that the resulting "lodestar" figure represents a reasonable fee. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). After calculating the lodestar, other considerations "may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 433. Among those other considerations is "the important factor of the 'results obtained.'" *Id.*; *see also id.* at n.9 (suggesting that many factors are often subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate).

**III. DISCUSSION**

    **A. Reasonable Attorneys' Fees**

The parties agree that Plaintiff prevailed in this section 1983 suit and is entitled to recover some measure of attorneys' fees. The only dispute between the parties is what constitutes a reasonable fee award.

3

### 1. Reasonable Rates

"Fee applicants have the burden of producing evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). "[T]he relevant community is the forum in which the district court sits." *Camancho*, 523 F.3d at 979. The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

This case was handled in large part by attorney Jeff Dominic Price. Price, who has 29 years of experience, requests compensation at the rate of $775/hour. (Price Decl. ¶ 9.) Two additional attorneys assisted largely at the trial stage. Corey Carter, who has six years of experience, requests $495/hour and Mary McCaffrey, who has 6 months of experience, requests $290/hour. (*See* Carter Decl, Exs. C, D; McCaffrey Decl., Exs. E, F.) In support of the fee request, Plaintiff's counsel relies on the declaration of attorney Carol Sobel. Sobel, who states that she has reviewed numerous fee applications by civil rights litigators in Southern California, explains that based on her review of comparable cases, her personal experience with Mr. Price, and her review of the resumés of all three attorneys, she would find the rates requested reasonable. (Sobel Decl. ¶ 26.)

As recognized by fellow district courts, these declarations are of limited value because "the appropriate standard is 'the prevailing rate in the community' to attract 'qualified counsel to civil rights cases,' and not necessarily what others in the community believed that *Plaintiffs' counsel* are entitled to." *See, e.g., Charles Antuna v. County of Los Angeles*, No. CV 14-5600-MWF (PLAx) (C.D. Cal. Mar. 8, 2016) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel.")). Accordingly, the court relies on its

4

own experience and recent fee awards in comparable civil rights cases to ascertain a reasonably hourly rate. In *Antuna*, the district court undertook a similar analysis in 2016 and found that senior partners or solo practitioners with over 30 years of experience should reasonably be compensated between $600 and $700 per hour, "with $700 reserved for those who have invested substantial energy and time in the case." *Id.*; *see also Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1023 (C.D. Cal. 2014) (awarding hourly rate of $700 to civil rights litigator with 28 years' experience). The district court in *Antuna* also concluded that hourly rates of $200 for associates with five years of experience and $100 for new attorneys were appropriate. Other courts have awarded even less for experienced civil rights litigators. *See Zuniga v. W. Apartments*, No. CV 13-04637-JFW, 2014 WL 6655997, at *2 (C.D. Cal. Nov. 24, 2014) (awarding hourly rate of $450 to fair housing litigator with 24 years of experience). Having reviewed Mr. Price's supporting declaration and his particular experience, along with comparable cases, the court finds that a reasonable hourly rate would be $650.

As to Mr. Carter's rate, the court notes that his resume does not indicate any particular experience with civil rights work and exceeds the court's understanding of prevailing market rates for someone with his level of experience. *See Contreras v. City of Los Angeles*, No. 2:11-CV-1480-SVW-SH, 2013 WL 1296763, at *4 (C.D. Cal. Mar. 28, 2013), *aff'd*, 603 F. App'x 530 (9th Cir. 2015) (awarding $320 per hour to civil rights litigator with six years of experience); *P.C. v. City of Los Angeles, et al.*, No. 2:07–cv–3413–PLA (C.D. Cal. Sept. 14, 2012) (awarding hourly rate of $320 to same attorney). Accounting for the rise in billing rates since 2013, the court would award Mr. Carter $380 per hour. Finally, the court finds Ms. McCaffrey's rate, though high for someone with such limited prior experience, is within the range of reasonable rates for newly admitted attorneys.

### 2. Reasonable Time Expended

Plaintiff's counsel have submitted detailed billing records indicating the time expended on various tasks. The total number of hours for which compensation is

requested is 906.36. Applying the approved rates, this would result in the following lodestar

| Attorney | Reasonable Rate | Hours | Lodestar |
|---|---|---|---|
| Jeff D. Price | $650 | 671.06 | $436,189 |
| Corey A. Carter | $380 | 79.1 | $30,058 |
| Mary E. McCaffrey | $290 | 156.2 | $45,298 |
| *Total* | | | $511,545 |

In an exercise of billing judgment, Plaintiff's counsel has voluntarily requested a 10% reduction in the fee award to account for any possibly duplicative or unnecessary work performed.

"The district court may not uncritically accept the number of hours claimed by the prevailing party, even if actually spent on the litigation, but must, in order to award fees based on them, find that the time actually spent was reasonably necessary." *Carson v. Billings Police Dept.*, 470 F.3d 889, 893 (9th Cir. 2006) (internal quotations omitted). Having conducted a review of Plaintiff's billing records, the court finds that the hours were reasonably expended. Likewise, Defendant does not object to any specific billing entries. Defendant does, however, propose reducing Mr. Price's billing rates for all non-trial related because this was work that could have been performed by a lower paid associate. In Defendant's view, the 209.40 hours Mr. Price billed in connection with trial should be paid at his lodestar rate while the remaining 461.06 hours should be billed at a rate more appropriate for associates. As an initial matter, this adjustment rests on the assumption that work done in connection with trial preparation is necessarily more complex than all other work. An attorney's efforts preparing to depose a witness, defend a key deposition, craft discovery requests, or brief motions in limine can be as complex as, say, preparing demonstratives for use at trial. Moreover, as Plaintiff notes, until shortly before trial there was no one to whom to delegate, as Mr. Price is a solo practitioner. Likewise, the Ninth Circuit has instructed that courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case . . . ." *Moreno v. City*

6

*of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, the court declines to speculate about whether certain tasks could have been delegated to a hypothetical less experienced associate. Moreover, to the extent that there was any overstaffing, Mr. Price's proposal for an across-the-board ten percent reduction adequately mitigates those concerns. Thus, the court finds that the overall reasonable fees incurred in this action amount to $460,390.50.

### B. Reduction under *Hensley*

Defendant also contend that, notwithstanding Plaintiff's overall success, the court should reduce the overall fee award for time spent preparing the abandoned *Monell* claim. As noted above, Plaintiff initially asserted individual claims against Det. Hendrickson, her supervisor, and the assigned Deputy District Attorney, as well as municipal liability claims against the City of Sacramento and the Sacramento Police Department. (*See* Third Amended Complaint.) The court dismissed the Deputy District Attorney on Defendant's Motion. (*See* Dkt. 51.) Shortly before trial, Plaintiff abandoned his *Monell* claims and presented a case only about Det. Hendrickson's liability. Defendant requests a 10% fee reduction to account for time spent on the unsuccessful and ultimately abandoned *Monell* claim.

Attorney's fees are not necessarily limited to work performed on successful claims. "A plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991); *see also Hensley*, 461 U.S. at 440 ("A plaintiff who has won substantial relief should not have attorney's fee reduced simply because the district court did not adopt each contention raised."). The *Hensley* Court established a two part analysis for determining attorney's fees where plaintiff has prevailed on some claims but not others. *See Hensley*, 461 U.S. at 434-35. First, the court must decide whether the successful and unsuccessful claims are related. Though there is no "precise" test of relatedness, related claims involve "a common core of facts" or are "based on related legal theories." *Thorne v. City of El Segundo*, 802 F.2d

1131, 1141 (9th Cir. 1986). If the claims are unrelated, hours spent on unsuccessful, unrelated claims should be excluded in considering the amount of a reasonable fee. *Hensley*, 461 U.S. at 440.

In the instant case, Plaintiff has not established the *Monell* claims and the claims against Det. Hendrickson personally are sufficiently related under the *Hensley* inquiry. As an initial matter, Plaintiff makes no argument on this point other than to reiterate *Hensley*'s teaching that an attorney who has secured a favorable outcome should be compensated "even if 'the plaintiff failed to prevail on every contention.'" (Reply 9 (quoting *Fox v. Vice*, 563 U.S. 826, 834 (2011)).) Moreover, a review of the operative complaint confirms that while the claims against Det. Hendrickson focused on her individual acts of judicial deception and malicious prosecution, the *Monell* claims allege that the city maintained deficient policies when investigating cases that involve exploitation of children over the Internet. (*See* TAC ¶ 132.) Although the two claims have some connection, they do not turn on a common core of facts and Plaintiff is not entitled to recover for time spent preparing that claim. *See Gonzales v. City of San Jose*, No. 13-CV-00695-BLF, 2016 WL 3011791, at *7 (N.D. Cal. May 26, 2016) (awarding fees in successful section 1983 action but declining to award fees for time spent on unsuccessful *Monell* claims). Defendant proposed a 10% reduction from Plaintiff's reasonably incurred expenses to account for the *Monell* claims. It is difficult to determine from reviewing Plaintiff's billing records the exact amount of time dedicated to preparing the municipal liability claim. Nonetheless, Plaintiff does not contest the 10% estimate and it accords with the court's understanding of the relative import of the claim to the overall litigation. Thus, the court will apply a 10% reduction to Plaintiff's reasonably incurred attorney's fees. After applying this adjustment, the court arrives at a fee award of $414,351.45.

**C. Supplemental Request**

Plaintiff seeks an additional $73,548.25 in fees incurred after trial, including fees related to Defendant's Motion for New Trial. From the records and declarations presented, the court finds that most, but not all, of the time billed was reasonably

8

expended. The court reduces the hours sought by Mr. Price by 3.2, the hours sought by Mr. Carter by 2, and the hours sought by Ms. McCaffrey by 13.5. At the reasonable rates discussed above, the court awards a further $57,496.00

**IV. CONCLUSION**

For the reasons stated above, the court GRANTS Plaintiff's Motion for Attorneys' Fees in the amount of $471,820.45.

**IT IS SO ORDERED.**

Dated: August 15, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE